JAMES R. NIKRAFTAR (State Bar No. 324437)
jnikraftar@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Plaintiff
Bryana Bongolan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BRYANA BONGOLAN, <br><br> Plaintiff, <br><br> v. <br><br> SEAN COMBS; BAD BOY ENTERTAINMENT LLC; CeOpCO, LLC (d/b/a COMBS GLOBAL); and DOE CORPS. 1–25, <br><br> Defendant. | CASE NO. 2:25 cv 11160 FMO AS <br><br> **SECOND AMENDED COMPLAINT for:** <br><br> 1. **SEXUAL BATTERY** <br> 2. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> 3. **FALSE IMPRISONMENT** <br> 4. **VIOLATION OF CAL. CIV. CODE § 52.4, PROHIBITION AGAINST GENDER-BASED VIOLENCE** <br> 5. **VIOLATION OF THE RALPH CIVIL RIGHTS ACT, CAL. CIV. CODE § 51.7** <br> 6. **VIOLATION OF THE BANE CIVIL RIGHTS ACT, CAL. CIV. CODE § 52.1; AND** <br> 7. **NEGLIGENT SUPERVISION AND RETENTION/FAILURE TO WARN** |

776642.1

1

AMENDED COMPLAINT

## FIRST AMENDED COMPLAINT

Plaintiff BRYANA BONGOLAN ("Plaintiff" or "Ms. Bongolan") who also goes by the nickname "BANA" alleges against Defendants SEAN COMBS ("Mr. Combs"), BAD BOY ENTERTAINMENT LLC, CeOpco, LLC f/k/a COMBS ENTERPRISES LLC and d/b/a COMBS GLOBAL, and DOE CORPORATIONS 1-25 (collectively, "Defendant Corporations," and together with Mr. Combs, "Defendants") as follows:

## INTRODUCTION

In or about September 2016, Sean "P. Diddy" Combs sexually battered Ms. Bryana "Bana" Bongolan, held her off of a 17-story-high balcony, and then slammed her onto the patio furniture on the balcony. His outrageous and abhorrent conduct violated Ms. Bongolan's fundamental dignity, bodily autonomy, and sense of safety. This event was the culmination of a series of threats, intimidation, and violence that colored many of Ms. Bongolan's interactions with Mr. Combs from the day she met him.

Mr. Combs is an international superstar, a music mogul, and a record company executive. He is also known for a history of violence, links to criminal conduct, and throwing drug- and alcohol-fueled parties. But most notoriously, Mr. Combs is known for his proven and now admitted violence against women, namely Casandra Ventura ("Ms. Ventura"), among others, as well as accusations of sexual assault, sexual harassment, intentional infliction of emotional distress, assault, battery, and sex trafficking in incidents that stretch back as early as 1990.

By contrast, when Ms. Bongolan met Mr. Combs, she was a young, aspiring fashion designer. Interactions born of her friendship with Ms. Ventura led to what Ms. Bongolan thought were once-in-a-lifetime opportunities to collaborate with Mr. Combs and his prolific business empire. But ultimately it only led to terror and abuse at his hands.

As a result of Mr. Combs' conduct and in addition to the physical wounds he inflicted on her, Ms. Bongolan has suffered psychological distress.

But Ms. Bongolan refuses to allow this fear to control the rest of her life, and brings this action to demand that Mr. Combs take responsibility for the trauma he intentionally and maliciously inflicted on Ms. Bongolan in robbing her not only of physical wellness, but of basic feelings of safety, bodily autonomy, and dignity.

## PARTIES

1. Plaintiff is an individual whose primary residence is in Los Angeles, California. During the time in which the events underlying Plaintiff's complaint occurred (2014 to September 2016), Plaintiff similarly resided in Los Angeles, California.

2. On information and belief, Mr. Combs is an individual whose primary residence is in New Jersey at the Federal Correctional Institute (FCI) Fort Dix. On information and belief, Mr. Combs regularly came to Los Angeles County between 2014 and 2016 to conduct business on behalf of himself and on behalf of the Defendant Corporations he controlled and/or for which he served as an executive. On information and belief, at all relevant times Mr. Combs also maintained personal residences in Los Angeles County.

3. On further information and belief, at all relevant times, Defendant Corporations maintained offices in Los Angeles County.

4. On information and belief, Defendant Bad Boy Entertainment LLC is a music, media, and entertainment company founded by Defendant Sean Combs, which includes the record label Bad Boy Records. At all relevant times, Defendant Bad Boy Entertainment LLC was an "employer" and/or "client" of Plaintiff within the meaning of all applicable statutes.

5.

6. On information and belief, Defendant CeOpco, LLC f/k/a Combs Enterprises LLC and d/b/a Combs Global is a New York limited liability company.

1  At all relevant times, Defendant Combs Enterprises, LLC was an "employer" and/or "client" of Plaintiff within the meaning of all applicable statutes.

7. Defendant Doe Corporations 1-25 are corporations and entities affiliated and associated with Defendants Sean Combs and the Defendant Corporations. At all relevant times, Defendant Doe Corporations 1-25 were "employers" and/or "clients" of Plaintiff within the meaning of all applicable statutes.

8. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein, Defendants, including DOES 1 through 25, were the agents, servants, employees and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or joint venture, and that each and every Defendant, when acting as a principal, was negligent in the selection and hiring of each and every other Defendant as an agent, employee, and/or joint venturer.

## JURISDICTION & VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, diversity jurisdiction is proper in this Court.

10. The Superior Court of California has concurrent jurisdiction to this Court, because the subject matter of this action has not been otherwise reserved to other trial courts by statute.

11. The Superior Court of California also has personal jurisdiction over Defendants pursuant to California Code of Civil Procedure § 410.10 because they have significant contacts in California, regularly conduct business in California, and the unlawful conduct toward Plaintiff occurred and caused harm predominantly in California.

12. Further, the amount in controversy exceeds the minimum for unlimited civil jurisdiction of California State Courts.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants regularly conduct business in Los Angeles County and the conduct and events giving rise to the claims described herein occurred in Los Angles County. Moreover, Plaintiff and a number of the witnesses to the events in question reside or regularly transact business in this County, and relevant evidence is believed to be located here as well.

## FACTUAL ALLEGATIONS

### A. The September 2016 Assault

14. In or about September 2016, Mr. Combs violently assaulted and sexually battered Ms. Bongolan.

15. In the early morning hours of the day in question, Ms. Bongolan, her then-girlfriend, and Ms. Ventura were sleeping in Ms. Ventura's apartment.

16. While they were sleeping, Mr. Combs suddenly and violently began shouting and banging on the door to Ms. Ventura's apartment. Recognizing the voice to be Mr. Combs' and knowing of his violent temper, Ms. Bongolan told her then-girlfriend to hide in the guest bathroom and lock the door, while Ms. Ventura remained in her bedroom.

17. Mr. Combs gained entry to the apartment and, upon seeing Ms. Bongolan on the balcony, advanced on her. He grabbed her, turned her back to his chest, and molested her by groping her breasts as she yelled to be left alone. When Ms. Bongolan began to physically struggle, Mr. Combs shifted his hands from her breasts to her arm pit area and lifted Ms. Bongolan up on the banister of the 17th floor balcony, while repeatedly yelling: "Do you know what the fuck you did! Do you know what the fuck you did!" Ms. Bongolan did not then, and does not know now, what Mr. Combs believed she did. Ms. Bongolan attempted to resist him, throwing her weight back in a struggle not to be thrown to the ground and what would likely be her death. As she struggled, her feet kicked off and over the banister, but at four feet and

eleven inches tall and weighing under one hundred pounds at the time, Mr. Combs easily overpowered her.

*Balcony where Mr. Combs attacked Ms. Bongolan*

18. Eventually, Ms. Ventura emerged from her bedroom and witnessed Mr. Combs holding Ms. Bongolan over the balcony. As she later described the event in a September 30, 2016 text message to Mr. Combs' assistant, Kristina Khorram, "[h]e came into my house and my friends were here. They woke me up because he was ringing the bell like crazy . . . He went at Bana and choked her then dangled her feet off the balcony."

19. Ms. Ventura, herself a frequent victim of Combs' violent temper, intervened. She screamed at him to stop and told him that there was another person in the apartment—referencing Ms. Bongolan's hiding girlfriend—who was aware of his presence and could hear the shouts from the relative shelter of the bathroom.

20. Mr. Combs, ostensibly recognizing the threat of so many witnesses to his assault, pulled Ms. Bongolan back from over the balcony. But he did not release her. In a last fit of violence, he slammed Ms. Bongolan onto the balcony's patio furniture, including a table.[1]

---

[1] On May 14, 2025, Ms. Ventura testified that she "saw [Mr. Combs] bring [Ms. Bongolan] back over the railing of the [17th floor] balcony and then throw her onto the patio furniture." *United States v. Combs*, Case No. 1:24-cr-00542 (AS), Trial



*Table onto which Ms. Bongolan was slammed*

### B. Ms. Bongolan Knew and Feared Sean Combs

21. Mr. Combs' assault was only the ultimate manifestation of Ms. Bongolan's legitimate fear of him which began long before.

22. Ms. Bongolan knew of Mr. Combs' violent and abusive behaviors before she ever met him. Ms. Bongolan initially met Mr. Combs through her friendship with Ms. Ventura whom she met in 2014 while the pair were working at Diamond Supply Co. At the time, Ms. Ventura was dating Mr. Combs and Ms. Bongolan noticed a disturbing pattern of abusive behavior. Mr. Combs would call Ms. Ventura at work, whose demeanor would immediately change. Ms. Ventura would abruptly excuse herself and speak in hushed tones, making sure no one could overhear their conversation. Mr. Combs would also call Ms. Bongolan's and Ms. Ventura's boss at work to yell at him for allegedly trying "to fuck his woman."

23. Once, when Ms. Ventura and Ms. Bongolan were out shopping, Mr. Combs texted Ms. Ventura, angry that she had not answered his calls. Ms. Ventura showed Ms. Bongolan the text message: a list of Ms. Ventura's last several locations with a message that read, "you better fucking answer."

---

Tr., 802:7-24 (May 14, 2025.)

24. On several occasions when Ms. Bongolan and Ms. Ventura were spending time together at the latter's apartment, Mr. Combs showed up unannounced and started banging on the door. Ms. Ventura would instruct Ms. Bongolan to be quiet so as to make Mr. Combs believe no one was home.

25. Ms. Bongolan recognized these as the disturbing signs of an abusive relationship. These suspicions were confirmed the first time Ms. Ventura showed her the bruises.

26. On or about May 2016, Ms. Ventura called Ms. Bongolan via videoconference to show her the blackeye she received from Mr. Combs. Ms. Bongolan was concerned for Ms. Ventura.

27. The beatings appeared to become more recurrent from then, as Ms. Bongolan regularly saw Ms. Ventura with bruises. Ms. Bongolan worried for her friend's safety, but it was also clear to her that Mr. Combs was a man to be feared.

28. In one incident when Ms. Bongolan was visiting Ms. Ventura at her home, Mr. Combs was there. The couple got into a fight and Mr. Combs threw a large kitchen knife at Ms. Ventura who, acting in self-defense, threw one back at him. Ms. Bongolan cowered in the corner, afraid of being caught in the crossfire.

C. **Ms. Bongolan Created Graphic and Clothing Designs for Mr. Combs and Defendant Corporations**

29. On or around the same time that Ms. Bongolan was learning of Mr. Combs' violent proclivities, Ms. Ventura and Mr. Combs first approached Ms. Bongolan to create graphic and clothing designs for them. Being young, ambitious, and a quintessential starving artist, Ms. Bongolan was quick to accept work from such a prolific figure and his legendary recording label. From 2016 to 2018, Ms. Bongolan performed numerous design projects at the behest of Mr. Combs and the Corporate Defendants. Several examples include:

- **Bad Boy Jackets:** On or around May 2016, Ms. Bongolan designed a series of jackets labelled the "Bad Boy Jackets" for Combs Enterprises while she was affiliated with Diamond Supply Co.

- **Cassie + BANA:** On or about 2016, Ms. Bongolan collaborated with Ms. Ventura to create a clothing line called "Cassie + BANA" in association with Bad Boy Entertainment which, on information and belief, Mr. Combs ultimately terminated.

- **Bad Boy Reunion Tour:** Mr. Combs approached Ms. Bongolan and requested that she perform design work for his upcoming Bad Boy Family Reunion Tour—a joint concert tour headlined by Mr. Combs, Ms. Ventura, and numerous other prominent artists which took place from around August 2016 to October 2016. Plaintiff was excited at the prospect of participating in the design of costumes for the numerous high-profile artists that would be participating in the tour. Ms. Bongolan created numerous designs for Defendants in connection with the tour and met with Mr. Combs about her work.

- **Merchandising for Ms. Ventura:** Ms. Bongolan created designs for Defendant Corporations in connection with merchandising associated with Ms. Ventura.

- **Album Covers:** In or about 2017, Ms. Bongolan was also commissioned by Combs Enterprises and Bad Boy Entertainment to create album covers for two of Ms. Ventura's singles—"Don't Play it Safe" and "Love a Loser"—that were released under the Bad Boy Entertainment label and for which Ms. Bongolan worked with the teams at Bad Boy, Epic Records, and Sony Music.

 

*Album covers designed by Ms. Bongolan*

- **Music Videos:**

  - Ms. Bongolan also performed design work for several of Ms. Ventura's music videos, including for the latter's "Don't Play it Safe" single.

- Ms. Bongolan also collaborated on the story line for Ms. Ventura's music video entitled "cassie. (Short film)" for which she is mentioned in the credits.[2]

### D. Mr. Combs Terrorized Plaintiff after She Began Working for Him

30. However, this closer working relationship not only did not lead to the career jump off for which she had hoped, but instead forced Plaintiff to experience Mr. Combs' violence and abuse firsthand in professional settings as well.

31. Mr. Combs began directing his rage toward Ms. Bongolan. On one occasion, Mr. Combs enticed Ms. Bongolan to come with him on a trip to Joshua Tree, California to show her "what was up" which she understood to mean that he wanted to show her the benefits of his association. But once there, Mr. Combs became aggressive and forcibly fed Ms. Bongolan a narcotic which she believes to have been ecstasy.

32. In a later instance, during one of Ms. Ventura's photoshoots, Mr. Combs cornered Ms. Bongolan and threatened her. From within an inch of her face he told her: "I'm the motherfucking devil. You have no idea what I could do to you. I could kill you." Ms. Bongolan was deeply distressed and took this threat seriously. She knew first-hand that Mr. Combs was a violent man with no compunction about hurting women, and was aware that Mr. Combs had been arrested and tried for a shooting inside a New York nightclub that left three people wounded.

33. Before and during this time period, Ms. Bongolan also heard stories of the extremity and sophistication of Mr. Combs' violence. For instance, in 2011, during a break in her relationship with Mr. Combs, Ms. Ventura had a brief romantic attachment to musician Scott "Kid Cudi" Mescudi. Ms. Bongolan heard that after they reunited, Mr. Combs told Ms. Ventura that he intended to blow up Kid Cudi's car. Shortly thereafter, in or around February 2012, Ms. Bongolan learned that Kid

---

[2] Cassie, *Cassie – cassie (Short Film)*, YouTube (Oct. 5, 2017) https://www.youtube.com/watch?v=_ECmHrdBDKs

Cudi's car was set aflame in his driveway. This account was later corroborated by Ms. Ventura and Kid Cudi.[3] She also heard rumors that Mr. Combs skinned a rival's dog.

34. Ms. Bongolan was aware of these incidents at the time Mr. Combs made the threat against her life. Although she did not know and does not know whether all of these stories are true, they informed her state of mind and the seriousness with which she considered Mr. Combs' threat on her life.

35. The September assault ultimately proved that Ms. Bongolan was correct to fear Mr. Combs and has resulted in deep and lasting harm. Mr. Combs' threats that he was the "motherfucking devil" and that he "could kill" her were intended to terrorize, intimidate, and instill fear. Therefore, when he forcibly groped her breasts, dangled her from a balcony, and battered her, she reasonably believed that Mr. Combs' assault was him making good on his threats.

36. Following the assault, Mr. Combs reached out to Ms. Bongolan directly as well as through Ms. Ventura, promising to cover the medical costs for the injuries he inflicted.

37. On information and belief, Defendant Corporations, and each of them, were aware of Mr. Combs' violent proclivities in general, as well as his assault on Ms. Bongolan in particular—an individual who before and after the assault was hired to perform work for Defendants.

38. On information and belief, at no time did Defendant Corporations or any of them discharge or discipline Mr. Combs for his violent conduct against Ms.

---

[3] See Compl., *Ventura v. Combs, et al.*, Case 1:23-cv-10098, ¶¶106-112 (S.D.N.Y Nov. 16, 2023), ECF 1.

On May 22, 2025, Kid Cudi testified in Mr. Combs' recently concluded criminal trial that the canvas top to his Porche was cut open and a Molotov cocktail was thrown inside, and that he believed Mr. Combs was responsible. He further testified that Mr. Combs admitted to and apologized for that conduct several years later.

Bongolan and in fact facilitated his efforts, by their actions or omissions, to prevent Ms. Bongolan taking steps to seek justice in criminal or civil courts.

39. Ms. Bongolan suffered, and continues to suffer, emotional distress in connection with being sexually and physically assaulted by Sean Combs. The only purpose of dangling someone over a balcony is to actually kill them or to intentionally terrorize them and rob them of any concept of dominion over their own bodily autonomy and safety. It should be no surprise that is exactly what happened to Ms. Bongolan.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Sexual Battery)**

**(*By Plaintiff Against Defendant Combs*)**

40. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

41. In performing the conduct described above, Mr. Combs committed a sexual battery against Plaintiff because he acted intentionally to cause a harmful and offensive contact with an intimate part of Plaintiff's body, to wit, her breasts, and a sexually offensive contact with Plaintiff resulted.

42. Mr. Combs' contact with her breasts was not merely incidental to his physical assault. It was an intentional groping of her breasts.

43. Plaintiff did not consent, verbally or otherwise, to Mr. Combs' touching of her breasts (or any other body part).

44. Mr. Combs' conduct amounts to a violation of, *inter alia*, Civil Code § 1708.5(a) and Penal Code §§ 242 and 243.4.

45. As a direct and legal result of Mr. Combs' conduct, Plaintiff has suffered, and continues to suffer, injuries and damages including physical injury, and mental and emotional distress.

46.     Mr. Combs' despicable conduct was intended to cause injury to Plaintiff, and was carried out with a willful and conscious disregard of her health and safety. His conduct further subjected Plaintiff to cruel and unjust hardship.  Pursuant to Civil Code section 3294 and by virtue of the foregoing oppressive and malicious conduct, Plaintiff is entitled to punitive damages.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (*By Plaintiff Against All Defendants*)

47.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

48.     Mr. Combs' conduct, including but not limited to his molestation of Plaintiff's person, his battery of her, and his hanging her off of a 17-story balcony was outrageous, intended to terrorize and cause her emotional distress, and did in fact cause her emotional distress.  This assault was so extreme as to go beyond the bounds of decency and be regarded intolerable by civilized society.

49.     On information and belief, Defendant Corporations were aware of Mr. Combs' violent proclivities in general, and of his assault on Ms. Bongolan in specific and ratified his conduct including by failing to dismiss him or discipline him in any way.

50.     As a direct and legal result of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff suffered, and continues to suffer injuries and damages, including mental and emotional distress.

51.     Mr. Combs' despicable conduct was intended to cause injury to Plaintiff, and was carried on with a willful and conscious disregard of her health and safety. His conduct further subjected Plaintiff to cruel and unjust hardship. Pursuant to Civil Code section 3294 and by virtue of the foregoing oppressive and malicious conduct, Plaintiff is entitled to punitive damages.

## THIRD CAUSE OF ACTION

### (False Imprisonment)

### (*By Plaintiff Against All Defendants*)

52. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

53. Mr. Combs wrongfully restrained and detained Plaintiff in the course of the aforementioned assault, and thereby limited her freedom of movement by use of force in violation of Penal Code section 236.

54. Such restraint compelled Plaintiff to remain on the 17th floor balcony in question for an appreciable length of time.

55. Plaintiff did not consent to and in fact directly protested this restraint, and demanded to be released, which demand Mr. Combs ignored.

56. On information and belief, Defendant Corporations were aware of Mr. Combs' violent proclivities in general, and of his assault on Ms. Bongolan in specific and ratified his conduct including by failing to dismiss him or discipline him in any way.

57. As a direct and legal result of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff suffered, and continues to suffer injuries and damages, including mental and emotional distress.

58. Mr. Combs' despicable conduct was intended to cause injury to Plaintiff, and was carried out with a willful and conscious disregard of her health and safety. His conduct further subjected Plaintiff to cruel and unjust hardship. Pursuant to Civil Code section 3294 and by virtue of the foregoing oppressive and malicious conduct, Plaintiff is entitled to punitive damages.

## FOURTH CAUSE OF ACTION

### (Violation of Cal. Civ. Code § 52.4, Prohibition Against Gender-based Violence)

### (*By Plaintiff Against All Defendants*)

59. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

60. Mr. Combs' assault of Plaintiff constitutes a criminal sexual battery including the use of physical force, as defined in Penal Code section 243.4.

61. As set forth above, Mr. Combs also subjected Plaintiff to unwanted physical contact of a sexual nature by use of physical force, including intentional and unwanted sexual groping of her breasts.

62. On information and belief, Defendant Corporations were aware of Mr. Combs' violent proclivities in general, and of his assault on Ms. Bongolan in specific and ratified his conduct including by failing to dismiss him or discipline him in any way.

63. As a direct and legal result of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff suffered, and continues to suffer, injuries and damages including mental and emotional distress.

64. Mr. Combs' despicable conduct was intended to cause injury to Plaintiff, and was carried on with a willful and conscious disregard of her health and safety. His conduct further subjected Plaintiff to cruel and unjust hardship. Pursuant to Civil Code section 3294 and by virtue of the foregoing oppressive and malicious conduct, Plaintiff is entitled to punitive damages.

## FIFTH CAUSE OF ACTION

### (Violation of the Ralph Civil Rights Act, Cal. Civ. Code § 51.7)

### (*By Plaintiff Against All Defendants*)

65. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

66. Mr. Combs committed a violent act against Plaintiff, motivated by her sex, by groping her breasts without her consent, in that he would not and could not have committed the same violence against a man and that his violent act was a substantial factor in the resulting physical and mental harm suffered by Plaintiff.

67. Mr. Combs has committed a sexual battery against Plaintiff, as defined in Penal Code section 243.3.

68. On information and belief, Defendant Corporations were aware of Mr. Combs' violent proclivities in general, and of his assault on Ms. Bongolan in specific and ratified his conduct including by failing to dismiss him or discipline him in any way.

69. As a direct and legal result of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff suffered, and continues to suffer, injuries and damages including mental and emotional distress.

70. Mr. Combs' despicable conduct was intended to cause injury to Plaintiff, and was carried out with a willful and conscious disregard of her health and safety. His conduct further subjected Plaintiff to cruel and unjust hardship. Pursuant to Civil Code section 3294 and by virtue of the foregoing oppressive and malicious conduct, Plaintiff is entitled to punitive damages.

## SIXTH CAUSE OF ACTION

**(Violation of the Bane Civil Rights Act, Cal. Civ. Code § 52.1)**

**(*By Plaintiff Against All Defendants*)**

71. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

72. Mr. Combs interfered or attempted to interfere by threat, intimidation, or coercion and by physical force, with Plaintiff's exercise or enjoyment of her right to be free from sexual assault and sex discrimination as secured by the laws of the State of California.

73. On information and belief, Defendant Corporations were aware of Mr. Combs' violent proclivities in general, and of his assault on Ms. Bongolan in specific and ratified his conduct including by failing to dismiss him or discipline him in any way.

74. As a direct and legal result of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff suffered, and continues to suffer, injuries and damages including mental and emotional distress.

75. Mr. Combs' despicable conduct was intended to cause injury to Plaintiff, and was carried out with a willful and conscious disregard of her health and safety. His conduct further subjected Plaintiff to cruel and unjust hardship. Pursuant to Civil Code section 3294 and by virtue of the foregoing oppressive and malicious conduct, Plaintiff is entitled to punitive damages.

## SEVENTH CAUSE OF ACTION

### (Negligent Supervision and Retention/Failure to Warn)

### (*By Plaintiff Against Defendant Corporations*)

76. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

77. Defendant Corporations and their agents, servants, representatives, and or employees failed to properly hire, train, and supervise their employees and agents.

78. By virtue of Plaintiff's relationship with Defendant Corporations as an employee and/or contractor, Defendant Corporations owed Plaintiff a duty not to retain Defendant Combs given his dangerous and violent propensities, which Defendant Corporations knew or should have known about.

79. Defendant Corporations also owed Plaintiff a duty to provide reasonable supervision of Mr. Combs, to use reasonable care to investigate Mr. Combs, and to provide adequate warning to Plaintiff of Mr. Combs' dangerous propensities.

80. Defendant Corporations also owed Plaintiff a duty of ordinary care for which they may be held vicariously liable.

81. Defendant Corporations impliedly represented that Mr. Combs was not a sexual, physical, or psychological threat to Plaintiff.

82. At no time during the periods of time alleged herein did Defendant Corporations have in place a reasonable system or procedure to investigate, supervise,

and monitor its professional and paraprofessional staff, including Mr. Combs, to prevent sexual assault, physical assault, sexual harassment, molestation, and threats or abuse of employees and contractors, nor did they implement a system or procedure to oversee or monitor Mr. Combs' conduct.

83. Defendant Corporations, by and through their agents, servants, and employees, were aware, or should have been aware, and understood how vulnerable employees and contractors were to sexual assault, physical assault, sexual harassment, molestation, and threats or abuse by Mr. Combs prior to his assault on Plaintiff. As a result, Defendant Corporations should have put in place appropriate safeguards to prevent foreseeable harm to employees and contractors, including Plaintiff. Defendant Corporations also failed to adequately (or at all) train their employees and agents in how to recognize and report any sexual battery or harassment.

84. Despite the fact that Defendant Corporations knew, or should have known, of threatening and sexually exploitive activities being perpetrated by Mr. Combs, Defendant Corporations failed to use reasonable care in investigating Mr. Combs and did nothing to reasonably investigate, supervise, monitor, or terminate Mr. Combs to ensure the safety of their employees and contractors.

85. Defendant Corporations' conduct in enabling Mr. Combs to sexually assault Plaintiff was a gross and inexcusable violation of the duty of care owed to Plaintiff.

86. As a direct and legal result of the wrongful conduct and/or omissions of Defendant Corporations, and each of them, Plaintiff suffered, and continues to suffer, injuries and damages including mental and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

1. General damages in an amount to be proven at trial;
2. Economic losses, in an amount to be proven at trial;

3. Punitive damages;

4. Attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Code sections 52(b), 52.1, and 52.4;

5. Prejudgment and post-judgment interest; and

6. Any other relief that the Court deems just and proper.

DATED: February 10, 2026        MILLER BARONDESS, LLP


By:  */s/ James R. Nikraftar*
        JAMES R. NIKRAFTAR
        Attorneys for Plaintiff
        Bryana Bongolan