JAMES R. NIKRAFTAR (State Bar No. 324437)
jnikraftar@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Plaintiff
Bryana Bongolan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

<table>
<tr><td>BRYANA BONGOLAN,<br><br>      Plaintiff,<br><br>   v.<br><br>SEAN COMBS; BAD BOY ENTERTAINMENT LLC; CeOpCO, LLC (d/b/a COMBS GLOBAL); and DOE CORPS. 1–25,<br><br>      Defendants.</td><td>CASE NO. 2:25-cv-11160-FMO-AS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>*[Filed Concurrently with [Proposed] Order]*<br><br>Assigned for All Purposes to:<br>Hon. Fernando M. Olguin, Crtrm. 6D and Magistrate Judge Alka Sagar, Crtrm 540<br><br>Hearing Date: Continued to May 21, 2026<br>Time:    10:00 a.m.<br>Judge:   Hon. Fernando M, Olguin<br>Courtroom:  6D<br><br>Trial Date:    None Set</td></tr>
</table>

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*(Left margin vertical text:)* MILLER BARONDESS, LLP · ATTORNEYS AT LAW · 2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067 · TEL: (310) 552-4400  FAX: (310) 552-8400

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  FACTS ................................................................................................................... 2

    A.   Factual Background ................................................................................... 2

    B.   Ms. Bongolan Worked For Defendants ..................................................... 3

    C.   Ms. Bongolan Learned Of Combs' Violent Tendencies ........................... 3

    D.   Combs Threatened Ms. Bongolan ............................................................. 4

    E.   The September 2016 Assault ..................................................................... 4

III. LEGAL STANDARD ........................................................................................... 5

IV.  ARGUMENT ......................................................................................................... 6

    A.   Ms. Bongolan Timely Filed Her Complaint ............................................. 6

        1.   Section 340.16 Supports All Claims In The SAC ......................... 6

        2.   Defendants Improperly Move To Strike Certain Allegations ..................................................................................... 7

    B.   Ms. Bongolan Adequately Pleads Her Claims Against Sean Combs ........................................................................................................ 9

        1.   False Imprisonment (Third Cause of Action) ............................... 9

        2.   Violation of Civil Code Section 52.4, Prohibition on Gender-Based Violence (Fourth Cause of Action) ..................... 10

        3.   Violation of the Ralph Civil Rights Act, Civil Code Section 51.7 (Fifth Cause of Action) ........................................ 12

        4.   Violation of the Bane Civil Rights Act Section 52.1 (Sixth Cause of Action) ............................................................. 13

    C.   Ms. Bongolan Adequately Pleads Her Claims Against The Corporate Defendants .............................................................................. 15

        1.   The SAC Complies With Rule 8(a)'s Pleading Standard ........... 15

        2.   Corporate Defendants' Liability Is Premised On Ratification, Not Vicarious Liability .......................................... 17

        3.   The SAC Sufficiently Pleads Negligent Supervision ................. 19

    D.   In The Alternative, Leave To Amend Should Be Granted ...................... 21

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

V.    CONCLUSION ...................................................................................................22

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

ii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acevedo v. eXp Realty, LLC,*
713 F. Supp. 3d 740 (C.D. Cal. 2024) ............................................................. 7, 19

*Austin v. Univ. of Or.*,
925 F.3d 1133 (9th Cir. 2019) ........................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 5, 15

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ....................................................................... 15, 16

*Carr v. County of San Diego*,
2020 WL 1046874 (S.D. Cal. Mar. 4, 2020) .................................................... 12

*Daniels v. Orange Cnty. Sheriff's Dep't*,
2026 WL 922045 (C.D. Cal. Mar. 30, 2026) .................................................... 12

*DeSoto v. Yellow Freight Sys., Inc.*,
957 F.2d 655 (9th Cir. 1992) ........................................................................ 21

*Deutsch v. Flannery*,
823 F.2d 1361 (9th Cir. 1987) ...................................................................... 21

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...................................................................... 16

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*,
415 U.S. 423 (1974) ....................................................................................... 5

*In re Dynamic Random Access Memory* (DRAM) *Indirect Purchaser Antitrust Litig.*,
28 F.4th 42 (9th Cir. 2022) ............................................................................. 5

*Lucius v. Erewhon Mkt.*,
2025 WL 3190901 (C.D. Cal. Oct. 16, 2025) ................................................... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,

798618.3

1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

519 F.3d 1025 (9th Cir. 2008) .................................................................................5, 18

*Reese v. County of Sacramento*,
   888 F.3d 1030 (9th Cir. 2018) ..............................................................................14

*Saavedra-Figueroa v. Holder*,
   625 F.3d 621 (9th Cir. 2010) ..................................................................................9

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ..................................................................7

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ..............................................................................15

**STATE CASES**

*Allen v. City of Sacramento*,
   234 Cal. App. 4th 41 (2015) .................................................................................14

*Austin B. v. Escondido Union School District*,
   149 Cal. App. 4th 860 (2007) .........................................................................12, 13

*C.R. v. Tenet Healthcare Corp.*,
   169 Cal. App. 4th 1094 (2009) .............................................................................17

*Cornell v. City & County of San Francisco*,
   17 Cal. App. 5th 766 (2017) ...........................................................................13, 14

*Doe v. Kachru*,
   115 Cal. App. 5th 175 (2025) ...............................................................................11

*Doe v. U.S. Youth Soccer Ass'n, Inc.*,
   8 Cal. App. 5th 1118 (2017) ...........................................................................19, 20

*D.Z. v. Los Angeles Unified School District*,
   35 Cal. App. 5th 210 (2019) ...........................................................................19, 20

*Fermino v. Fedco, Inc.*,
   7 Cal. 4th 701 (1994) ...........................................................................................8, 9

*Jane Doe #21 (S.H.) v. CFR Enterprises, Inc.*,
   93 Cal. App. 5th 1199 (2023) .................................................................................6

*Jones v. Kmart Corp.*,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

17 Cal. 4th 329 (1998) ..................................................................................................... 13

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*,
    12 Cal. 4th 291 (1995) ............................................................................................. 18

*Mary M. v. City of Los Angeles*,
    54 Cal. 3d 202 (1991) .............................................................................................. 18

*People v. Arnold*,
    6 Cal. App. 4th 18 (1992) ........................................................................................ 10

*People v. Castro*,
    138 Cal. App. 4th 137 (2006) .................................................................................... 9

*People v. Fernandez*,
    26 Cal. App. 4th 710 (1994) ...................................................................................... 9

*Roberts v. Ford Aerospace & Commc'ns Corp.*,
    224 Cal. App. 3d 793 (1990) ................................................................................... 17

*Ventura v. ABM Indus. Inc.*,
    212 Cal. App. 4th 258 (2012) .................................................................................. 17

**STATE STATUTES**

Cal. Civ. Code § 51.7 .............................................................................................. 11, 12

Cal. Civ. Code § 52.4 ................................................................................................ 2, 10

Cal. Civ. Code § 2339 .................................................................................................... 17

Cal. Civ. Code § 3294 ...................................................................................................... 8

Cal. Civ. Proc. Code § 340.16 ................................................................................. passim

Cal. Penal Code § 243.4 ........................................................................... 1, 6, 11, 12

**FEDERAL RULES**

Fed. R. Civ. P. 7(b)(1)(B) ................................................................................................ 8

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 5, 15, 16

Fed. R. Civ. P. 12(f) ........................................................................................................ 8

Fed. R. Civ. P. 15(a)(2) ........................................................................................... 16, 21

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In September 2016, Sean "P. Diddy" Combs sexually assaulted Bryana "Bana" Bongolan.  He grabbed her, pinned her against his chest, and groped her breasts as she screamed to be left alone.  When she physically struggled, he lifted her up onto the banister of a 17th-floor balcony, dangling her feet over the edge while screaming at her.  When a witness intervened, Mr. Combs pulled Ms. Bongolan back—only to slam her onto the patio furniture.  This brutal attack was the culmination of a pattern of threats, intimidation, and violence that Ms. Bongolan experienced throughout her professional relationship with Mr. Combs and the Corporate Defendants she served as a designer.

Defendants now move to dismiss Ms. Bongolan's claims, arguing they are time-barred and insufficiently pled.  They are wrong on both counts.

First, all of Ms. Bongolan's claims are timely under California Code of Civil Procedure section 340.16.  The California Legislature enacted section 340.16 to give survivors of sexual assault expanded time to seek civil remedies for the harm they suffered—not just for sexual battery claims, but for "*any* civil action for recovery of damages suffered as a result of sexual assault."  Cal. Civ. Proc. Code § 340.16(a) (emphasis added).  The California Court of Appeal and multiple federal courts have held that section 340.16's revival provision extends to all claims arising from a sexual assault, including civil rights claims, intentional infliction of emotional distress, negligence, and false imprisonment.  The Second Amended Complaint ("SAC") plainly alleges a sexual assault: Mr. Combs grabbed Ms. Bongolan, restrained her against her will, and groped her breasts while she physically resisted and yelled to be left alone.  This conduct satisfies the statutory definition of sexual assault under Penal Code section 243.4.  All of Ms. Bongolan's claims flow from this sexual assault, and all are therefore timely.

798618.3

1

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

Second, each of Ms. Bongolan's claims against Mr. Combs is adequately pled. The SAC alleges in detail how Mr. Combs sexually battered her, falsely imprisoned her, inflicted severe emotional distress, committed gender-based violence under Civil Code section 52.4, violated the Ralph Civil Rights Act by committing violence motivated by her sex, and violated the Bane Civil Rights Act by interfering with her rights through threats, intimidation, and coercion. Defendants' arguments to the contrary misread the applicable statutes and ignore controlling case law.

Third, Ms. Bongolan's claims against the Corporate Defendants are likewise well pled. The SAC alleges that Bad Boy Entertainment and CeOpco (d/b/a Combs Global and together the "Corporate Defendants") are liable on a theory of ratification—not vicarious liability—because they were aware of Mr. Combs' violent conduct and failed to discharge or discipline him. California law is clear that an employer's failure to discipline an employee after learning of tortious conduct constitutes ratification, and Defendants' motion fails to address this theory entirely. The SAC also adequately pleads negligent supervision by alleging that the Corporate Defendants knew of Mr. Combs' pattern of violence against women and failed to take any steps to protect their employees and contractors, including Ms. Bongolan.

Defendants' Motion should be denied.

## II.  FACTS

### A.  Factual Background

In or about September 2016, Sean Combs sexually battered Bryana "Bana" Bongolan, held her off of a 17-story-high balcony, and then slammed her onto the patio furniture on the balcony. SAC ¶¶ 14, 17–20. His outrageous and abhorrent conduct violated Ms. Bongolan's fundamental dignity, bodily autonomy, and sense of safety. This assault was the culmination of a series of threats, intimidation, and violence that colored many of Ms. Bongolan's interactions with Mr. Combs from

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

2

the day she met him.  SAC ¶ 21.

## B.  Ms. Bongolan Worked For Defendants

From 2016 to 2018, Ms. Bongolan performed numerous design projects at the behest of Mr. Combs and the Corporate Defendants, including designing a series of "Bad Boy Jackets" for Combs Enterprises, collaborating on a clothing line called "Cassie + BANA" in association with Bad Boy Entertainment, performing design work for Mr. Combs' Bad Boy Family Reunion Tour, creating merchandising designs for Ms. Ventura, designing album covers for Ms. Ventura's singles "Don't Play it Safe" and "Love a Loser" for Bad Boy Entertainment, and design work for several of Ms. Ventura's music videos.  SAC ¶ 29.  But these professional opportunities ultimately only led to terror and abuse at Combs' hands.  SAC, Introduction.

## C.  Ms. Bongolan Learned Of Combs' Violent Tendencies

Ms. Bongolan initially met Mr. Combs through her friendship with Ms. Cassandra Ventura whom she met in 2014 while the pair were working together. Ms. Bongolan came to learn the Mr. Combs was beating Ms. Venture who showed her the injuries, was tracking her whereabouts and would show up unannounced. SAC ¶¶ 21–27.  In one incident when Ms. Bongolan was visiting Ms. Ventura at her home, Mr. Combs was there.  The couple got into a fight and Mr. Combs threw a large kitchen knife at Ms. Ventura who, acting in self-defense, threw one back at him.  Ms. Bongolan cowered in the corner, afraid of being caught in the crossfire. SAC ¶ 28.

During this time, Ms. Bongolan also heard stories of the extremity and sophistication of Mr. Combs' violence, including throwing a Molotov cocktail inside the vehicle of Kid Cudi, his romantic rival.  SAC ¶ 33 & n.3.  She also heard rumors that Mr. Combs skinned a rival's dog.  SAC ¶ 33.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

### D.    Combs Threatened Ms. Bongolan

During their association, Mr. Combs threatened and coerced Ms. Bongolan in violent ways.  On one occasion during a trip to Joshua Tree, Mr. Combs became aggressive and forcibly fed Ms. Bongolan a narcotic which she believes to have been ecstasy.  SAC ¶ 31.  In a later instance, during one of Ms. Ventura's photoshoots, Mr. Combs cornered Ms. Bongolan and threatened her.  From within an inch of her face he told her: "I'm the motherfucking devil.  You have no idea what I could do to you.  I could kill you."  SAC ¶ 32.  Ms. Bongolan was also aware that Mr. Combs had been arrested and tried for a shooting inside a New York nightclub that left three people wounded.  SAC ¶ 32.

### E.    The September 2016 Assault

Mr. Combs threats culminated one early morning in September 2016.  Mr. Combs gained entry to the apartment where Ms. Bongolan was sleeping and, upon seeing her on the balcony, grabbed her, turned her back to his chest, and molested her by groping her breasts as she yelled to be left alone.  SAC ¶ 17.  The contact with her breasts was not merely incidental to his physical assault—it was an intentional sexual groping.  SAC ¶ 42.  As Ms. Bongolan struggled, Mr. Combs shifted his hands from her breasts to her arm pit area and lifted Ms. Bongolan up on the banister of the 17th floor balcony.  SAC ¶¶ 17–18.

Ms. Ventura emerged from her bedroom and, herself a frequent victim of Combs' violent temper, intervened and screamed at him to stop, telling him that there was another person in the apartment who was aware of his presence and could hear the shouts.  SAC ¶¶ 18–19.  But Mr. Combs did not release her.  In a last fit of violence, he slammed Ms. Bongolan onto the balcony's patio furniture, including a table.  SAC ¶ 20.

As a result of Mr. Combs' conduct and in addition to the physical wounds he inflicted, Ms. Bongolan has suffered, and continues to suffer, psychological distress.  SAC ¶¶ 39, 45, 50, 57.  Mr. Combs' threats that he was the "motherfucking devil"

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX (310) 552-8400

and that he "could kill" her were intended to terrorize, intimidate, and instill fear. SAC ¶ 35.  When he forcibly groped her breasts, dangled her from a balcony, and battered her, Ms. Bongolan reasonably believed that Mr. Combs' assault was him making good on his threats.  *Id.*

## III.   LEGAL STANDARD

"[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974).  "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but rather factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56.  "Generally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory* (DRAM) *Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## IV.    ARGUMENT

### A.    Ms. Bongolan Timely Filed Her Complaint

#### 1.    Section 340.16 Supports All Claims In The SAC

Ms. Bongolan timely filed her complaint as to all causes of action, pursuant to California Code of Civil Procedure section 340.16(a)'s revival provision for survivors of sexual assault. *See* Cal. Civ. Proc. Code § 340.16(a)(1) (a survivor of sexual assault may file claims for damages "[w]ithin 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of ***sexual assault*** against the plaintiff" (emphasis added)).[1]  The statute defines "sexual assault" to include crimes enumerated in Penal Code section 243.4. *Id.* § 340.16(b)(1).  Section 243.4 imposes criminal liability for a variety of species of sexual assault and battery against any "person who touches an intimate part of another person" where "the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse."  Cal. Penal Code § 243.4(a)-(e)(1).  The definition of "intimate part" includes "the breast of a female." *Id.* § 243.4(g)(1).

The SAC plainly alleges a sexual assault and battery as defined for purposes of Section 340.16(a).  Ms. Bongolan alleges that Sean Combs physically grabbed her, manually restrained her, and groped her breasts—all while she physically fought him and yelled to be left alone.  SAC ¶ 17.

Defendants argue generally that Section 340.16 can only revive a claim for sexual battery, not any of Ms. Bongolan's other claims.  Mot. at 5–6.  But the statute is not so myopic.  The California Court of Appeal explicitly rejected this exact

---

[1] Alternatively, a survivor can sue "[w]ithin three years from the date the plaintiff discovers or reasonably should have discovered that an injury or illness resulted from an act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff," whichever is later.  Cal. Civ. Proc. Code § 340.16(a)(2).

798618.3

6

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

argument in *Jane Doe #21 (S.H.) v. CFR Enterprises, Inc.*, 93 Cal. App. 5th 1199, 1209 (2023) in which the court, in finding that Section 340.16 revived, *inter alia*, claims under the Ralph Civil Rights Act, the language the statute "by its terms" is "not limited to causes of action for sexual assault/battery: it applies to '*any civil action for recovery of damages suffered as a result of sexual assault.*'" *Id.* (citing § 340.16(a)).

Federal courts are in accord. For instance, in *Acevedo v. eXp Realty, LLC*, a case cited by Defendants, the court found that Section 340.16 revived claims for intentional infliction of emotional distress and negligence. 713 F. Supp. 3d 740, 790 (C.D. Cal. 2024) ("[S]ection 340.16, by its terms, is not limited to *claims* of sexual assault, but applies to *any action* seeking damages *as a result of* sexual assault, regardless of the legal theory alleged."). This case law runs directly contrary to Defendants' unsupported interpretation of section 340.16.

Beyond general posturing, the Motion does not specifically address any cause of action in the SAC, save for Ms. Bongolan's claim for false imprisonment, which Defendants contend is time barred because that claim seeks damages from being confined as distinct from being sexually assaulted. Mot. at 6:9–10 (arguing the fact that Ms. Bongolan "was sexually assaulted *during* her false imprisonment is irrelevant"). But Defendants offer no authority—and seem to acknowledge that none exists—that would limit section 340.16 in this context, nor any that would support parsing the facts in this way. Mot. at 5:27–6:2. This makes sense given that Ms. Bongolan's false imprisonment was part-and-parcel to the sexual assault in question and as such is revived by section 340.16.

2. Defendants Improperly Move To Strike Certain Allegations

Defendants also ask the Court to strike certain allegations in the SAC, complaining that these are not "substantively, or even temporally related to the alleged sexual assault" and therefore "should be excluded." Mot. at 6:14–7:3. Preliminarily, this argument is not within the scope of Defendants' Notice of

798618.3

7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

Motion, nor has a proposed order been filed which pertains to striking certain allegations. *See* Dkt Nos. 24, 24-3. The Motion also does not address why or how these allegations should be struck under the Rule 12(f) standard that would apply to such a request. It is therefore procedurally improper and should not be considered. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1161 (S.D. Cal. 2021) (denying motion to strike made under motion to dismiss standard and without addressing the 12(f) standard); *see also* Fed. R. Civ. P. 7(b)(1)(B), 12(f).

Second, Defendants ostensibly seek to exclude paragraphs 21–35 of the SAC (Mot. at 6:22), but these allegations are material and relate directly to all causes of action. First, these allegations are relevant to damages and Ms. Bongolan's claim for intentional infliction of emotional distress, given the severity of emotional distress is based on a plaintiff's state of mind and these allegations bear on Ms. Bongolan's knowledge of Mr. Combs' history of extreme violence (SAC ¶¶ 22–28, 33), her personal experience of his aggression and threats (SAC ¶¶ 31–32), and her reasonable belief that "Mr. Combs' assault was him making good on his threats" (SAC ¶ 35). They are also relevant to punitive damages as they demonstrate that Mr. Combs' conduct was part of a pattern of "oppression" and "malice"—not an isolated incident—and was carried out "with a willful and conscious disregard" of Ms. Bongolan's safety (SAC ¶ 46). *See* Cal. Civ. Code § 3294. Further, these allegations bear on the gender motivation for the assault which is relevant to Ms. Bongolan's claims under the Ralph Civil Rights Act and for violation of section 52.4 (SAC ¶¶ 22–28), they reflect intimidation and threats that bear on her Bane Act claims (SAC ¶ 32), and they relate to the foreseeability of harm which is necessary under her negligent supervision claim (SAC ¶¶ 22–30, 32). None of these allegation are extraneous and the Court should strike none.

8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**B.      Ms. Bongolan Adequately Pleads Her Claims Against Sean Combs**

1.      False Imprisonment (Third Cause of Action)

The elements of false imprisonment are (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.[2]  *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994).

Here, Ms. Bongolan alleges that Sean Combs "grabbed her" and pinned her to his chest while he "molested her by groping her breasts as she yelled to be left alone."  SAC ¶ 17.  She further alleges that she "attempted to resist him" as he forcibly held her, but that he "overpowered her" while she "physically struggle[d]"  SAC ¶¶ 17–18.  These allegations support that Mr. Combs physically restrained Ms. Bongolan, against her will and despite her verbal and physical protests.  These allegations satisfy the elements of a false imprisonment claim.

Defendants argue that these allegations are inadequate because they allege that Mr. Combs' restraint of Ms. Bongolan was with an intent to harm, not an intent to confine.  Mot. at 7:13–16.  But Defendants fundamentally misunderstand the intent element of false imprisonment.

First, courts have consistently found false imprisonment established and/or well pled where defendant is shown or alleged to have used physical force to confine a victim.  *See, e.g.*, *People v. Fernandez*, 26 Cal. App. 4th 710, 717 (1994); *People v. Castro*, 138 Cal. App. 4th 137, 143 (2006).

Second, courts establish that an intent to confine is a lesser standard than an intent to harm.  False imprisonment is a general intent tort, not specific intent.  *See, e.g.*, *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 625 (9th Cir. 2010) (false imprisonment "is a general intent crime, because its definition 'includes only a

---

[2] The criminal offense and civil tort have the same elements. The tort is identically defined. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

description of the particular act without any reference to an intent to do a further act or achieve a further consequence'"); *Fernandez*, 26 Cal. App. 4th at 717.  This means that a plaintiff need *only* allege that a defendant wanted to commit the particular act of confinement, rather than show that they wanted to achieve the result of harming the plaintiff.  *See Fermino*, 7 Cal. 4th at 716 ("The only mental state required to be shown ... is the intent to confine[.]").  In *Fermino*, upon which Defendants rely for this argument, the California Supreme Court explained there need not be a motive to cause harm and that "indeed false imprisonments often appear to arise from initially legitimate motives." *Id.* (addressing the legitimate motive of a merchant detaining suspected thieves).  This case demonstrates that the act of detention is sufficient to satisfy the intent prong of this cause of action, whether or not there was an intent to harm.  Notably, Defendants fail to cite to any authority supporting their interpretation of the intent requirement for false imprisonment.[3]

In sum, Ms. Bongolan has alleged that Mr. Combs intentionally restrained her without her consent for an appreciable period of time.  That the SAC alleges that he intended such restraint to cause harm rather than to only confine strengthens her pleading; it does not impugn it.

2. <u>Violation of Civil Code Section 52.4, Prohibition on Gender-Based Violence (Fourth Cause of Action)</u>

The SAC adequately pleads violation of the prohibition against gender-based violence in Civil Code section 52.4(c)(2), which Defendants fail to address in their

---

[3] Defendants do not argue that Ms. Bongolan has not sufficiently alleged that she was restrained by Mr. Combs for an appreciable length of time, nor could they.  *See* Mot. at 7; *see also, e.g.*, *People v. Arnold*, 6 Cal. App. 4th 18, 29 (1992) (defendant committed a restraint when he pulled plaintiff to him, grabbed her buttocks, and kissed her).  They argue only that Ms. Bongolan has not alleged that Mr. Combs had an intent to confine her.

10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

Motion.

Civil Code Section 52.4(a) provides that "[a]ny person who has been subjected to gender violence may bring a civil action for damages against any responsible party." *Id.* "Gender violence" is defined as *either* the criminal use of force "committed at least in part based on the gender of the victim," *id.* at § 52.4(c)(1), *or* a "physical intrusion or physical invasion of a sexual nature under coercive conditions," *id.* § 52.4(c)(2). Defendants' Motion addresses the former circumstance, but not the latter. Mot. at 7–8. Notably, the latter does not include the "based on gender" language.

The SAC's allegations map directly onto 52.4(c)(2). Ms. Bongolan alleges that Mr. Combs committed a *physical intrusion or invasion*—he "grabbed her, turned her back to his chest, and molested her by groping her breasts as she yelled to be left alone" (SAC ¶ 17); that he "subjected Plaintiff to unwanted physical contact *of a sexual nature* by use of physical force, including intentional and unwanted sexual groping of her breasts" (SAC ¶¶ 17, 41–42, 61); and that his conduct was *under coercive conditions* given the assault took place while Mr. Combs was physically overpowering Ms. Bongolan, dangling her over a 17th-floor balcony, and slamming her onto patio furniture (*id.*; *see also* SAC ¶ 60 ("constitutes a criminal sexual battery including the use of physical force, as defined in Penal Code section 243.4"). Because the SAC adequately pleads every element of (c)(2), the gender violence claim is viable regardless of whether the SAC also satisfies the separate requirements of (c)(1).

For the same reason, Defendants' reliance on *Doe v. Kachru*, 115 Cal. App. 5th 175 (2025) is misplaced. In *Kachru*, an obstetric patient alleged gender violence against a doctor who performed an unauthorized vacuum-assisted vaginal delivery. *Id.* at 182. The court analyzed the claim under subdivision (c)(1) and concluded that the plaintiff had not alleged discriminatory intent, i.e. the doctor did not perform the procedure *because of* the patient's gender but rather out of medical judgment or

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

negligence. The court's discussion of "bias or animus" was addressed to, and limited to, the requirements of (c)(1). *Kachru* had no occasion to address subdivision (c)(2), because the conduct at issue was not "a physical intrusion or physical invasion of a sexual nature." The case therefore provides no guidance, and certainly no holding, on whether (c)(2) requires discriminatory motivation.

### 3.    Violation of the Ralph Civil Rights Act, Civil Code Section 51.7 (Fifth Cause of Action)

To plead a prima facie claim under the Ralph Civil Rights Act (RCRA), a plaintiff must allege that "(1) the defendant threatened or committed a violent act against the plaintiff, (2) the plaintiff was harmed, (3) a substantial motivating reason for the defendant's conduct was his perception that the plaintiff was a member of a protected group, and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Carr v. County of San Diego*, 2020 WL 1046874, at *7 (S.D. Cal. Mar. 4, 2020); *see also* Cal. Civ. Code § 51.7; *id.* § 51(b), (e)(6) (including sex as a protected group). The SAC meets this standard.

The SAC alleged that Mr. Combs violently and sexually assaulted Ms. Bongolan, including by groping her, dangling her off a building and slamming her down on outdoor furniture. SAC ¶¶ 17–18. It also alleges that she was harmed directly because of his attack (*see e.g.* SAC ¶¶ 69), that Mr. Combs was "motivated by [Ms. Bongolan's] sex, groping her breasts without her consent, in that he would not and could not have committed the same violence against a man" and that such conduct is a sexual battery as defined in Penal Code section 243.3 (SAC ¶¶ 66–67). These allegations directly satisfy the pleading elements of the RCRA.

Notably, even were the allegations not so specific as they are, California courts have routinely permitted RCRA claims where "a reasonable inference can be drawn from the facts alleged … that a substantial, motivating reason" for the defendant's conduct was the plaintiff's protected characteristic. *See, e.g.*, *Carr*, 2020 WL 1046874, at *7 (denying a motion to dismiss on a RCRA claim where the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

facts alleged led to a reasonable inference that defendants were aware of plaintiff's medical condition or disability); *Daniels v. Orange Cnty. Sheriff's Dep't*, 2026 WL 922045, at *7 (C.D. Cal. Mar. 30, 2026) ("[C]ourts have found that a reasonable inference of improper motivation can, and at the pleading stage, must, be drawn where defendants have knowledge of a plaintiff's membership in a protected group.").

Defendants rely on *Austin B. v. Escondido Union School District*, 149 Cal. App. 4th 860 (2007) not just to argue that the SAC must allege a gender-based motivation, but also that it "is required" that the SAC allege "Mr. Combs held an animus towards *women in general*." Mot. at 9. But *Austin B.* does not stand for those propositions. First, *Austin B.* does not address sufficiency of any pleading or what must be alleged; the case pertains to a grant of nonsuit following trial. 149 Cal. App. 4th at 870. As such, Defendants' argument that the pleading is deficient for failing to allege that Combs broadly was prejudiced against women in general is entirely unsupported. *Austin B.* is also distinct from our case because the RCRA claim there was based on abuse directed at disabled children, and it failed because there was no evidence implying that the abuser was motivated by their disability. *Id.* at 881. Here, Combs' conduct is directly tied to Ms. Bongolan's protected characteristic—her sex—because he groped her breasts.

### 4. Violation of the Bane Civil Rights Act Section 52.1 (Sixth Cause of Action)

To plead a prima facie claim for violation of the Bane Civil Rights Act, a plaintiff must allege (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998); *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 800 (2017).

The SAC meets this standard. Ms. Bongolan alleges that "Mr. Combs

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

interfered or attempted to interfere by threat, intimidation, or coercion and by physical force, with Plaintiff's exercise or enjoyment of her right to be free from sexual assault and sex discrimination as secured by the laws of the State of California." SAC ¶ 72. She further alleges that he interfered with those rights by sexually assaulting her. SAC ¶¶ 17–18. The SAC also explicitly alleges numerous independent, prior instances of threat, intimidation, and coercion which "were intended to terrorize, intimidate, and instill fear" and that the assault was "him making good on his threats." SAC ¶ 35. These threats included that Mr. Combs cornered Ms. Bongolan during a photoshoot and, from within an inch of her face, told her: "I'm the motherfucking devil. You have no idea what I could do to you. I could kill you." SAC ¶ 32. He also forcibly fed Ms. Bongolan a narcotic on a trip to Joshua Tree. SAC ¶ 31. The SAC also highlights that such threats were particularly intimidating given that Ms. Bongolan was aware of Mr. Combs' history of extreme violence, including his alleged firebombing of Kid Cudi's car and his admitted violence against Cassandra Ventura which she witnessed. SAC ¶¶ 22–28, 33–34.

Defendants argue that Ms. Bongolan's Section 52.1 claim is inadequately pled by ignoring all of the above allegations and obtusely pointing solely to paragraph 72 of the SAC and claiming it is conclusory. Mot. at 9. This is simply not the case and, notably, this cause of action expressly incorporates by reference each of the aforementioned allegations. *See* SAC ¶ 71. Taken together, Ms. Bongolan's Bane Act claim is indisputably well pled.

Defendants otherwise argue that this claim fails because Ms. Bongolan is required to plead an offending "threat, intimidation, or coercion" that is independent of the underlying legal violation. But prevailing case law from the California Court of Appeal and the Ninth Circuit says otherwise.

In *Cornell*, 17 Cal. App. 5th at 800, the court stated that "[n]othing in the text of [Section 52.1] requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Id.* (finding that a

798618.3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT

"properly pleaded" unlawful arrest could satisfy both elements of 52.1.)  The Ninth Circuit adopted this position as well in *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  Both cases found that the Bane Act does not require independent conduct for each element of the claim.  Under these cases, even if the SAC relied solely on the September 2016 assault (which it does not), the BCRA claim could still survive because the SAC's allegations.

The cases cited by Defendants are unavailing here.  Mot. at 9–10 (citing *Lucius v. Erewhon Mkt.*, 2025 WL 3190901, at *9 (C.D. Cal. Oct. 16, 2025) and *Allen v. City of Sacramento*, 234 Cal. App. 4th 41 (2015)).  *Allen v. City of Sacramento* predates both *Cornell* and *Reese*, and involved routine arrests of homeless people, not a sexual assault, and therefore has no factual analogue to our case.  And *Lucius* in an unreported district court opinion whose analysis does not account for the *Cornell/Reese* framework.  To the extent *Lucius* applied *Allen* without engaging with *Cornell* and *Reese*, it is of no value here.

## C.    Ms. Bongolan Adequately Pleads Her Claims Against The Corporate Defendants

### 1.    The SAC Complies With Rule 8(a)'s Pleading Standard

The SAC adequately pleads its claims against the Corporate Defendants. Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to ensure that a defendant "receives 'fair notice' of the claims against it," *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  "[A] dismissal for a violation of Rule 8(a)(2), is usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 762 (9th Cir. 2025).  "[O]ur precedent does not prohibit collective pleading so long as the complaint gives defendants fair notice of the claims against them." *Id.*  The SAC meets this standard.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Defendants argue that the pleading fails because the SAC cannot satisfy the single-enterprise doctrine, but also confusingly seem to conflate this with the group pleading doctrine. Mot. at 11:1–2 ("No legal doctrine permits group pleading here. It may be allowable under the single-enterprise doctrine, which does not apply here."). Whatever the case, SAC does not rely on the single-enterprise doctrine to establish the Corporate Defendants' liability. Instead, the SAC proceeds on theories of direct liability—specifically, ratification and negligent supervision—that do not require piercing the corporate veil or collapsing the entities into one.

But even were that not the case, the SAC still meets Rule 8's requirements for collective pleading. The Ninth Circuit's opinion in *Briskin* is instructive here. In that case, the court found that a collectively pled complaint was sufficiently pled because the entities in question were three "closely related corporate defendants," the SAC "generally describe[d] each company's role" in the underlying privacy violations, and the SAC was "highly detailed as to the technology used " to commit those violations. *Briskin*, 135 F.4th at 762.

Here, the SAC similarly articulates that they are closely related entities (SAC ¶ 8) and provides "highly detailed" allegations of the underlying tortious conduct (SAC ¶¶ 17–18). The SAC also makes the substance of Ms. Bongolan's claims against each Corporate Defendant clear by identifying the work she performed for each, and that their liability stems from their ratification of Mr. Combs' violent conduct.[4] *See* Section IV.C.2, *infra.*

The SAC also alleges Mr. Combs relationship among the three defendants—that Mr. Combs founded Bad Boy Entertainment (SAC ¶ 4), that CeOpco, LLC does business under his name as "Combs Global" (SAC ¶ 6), and that Mr. Combs

---

[4] This included designing "Bad Boy Jackets" for Combs Enterprises, collaborating on a clothing line "in association with Bad Boy Entertainment," creating album covers "commissioned by Combs Enterprises and Bad Boy Entertainment," and performing design work for the Bad Boy Family Reunion Tour. SAC ¶ 29.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

"controlled and/or … served as an executive" for both entities (SAC ¶ 2).  And it alleges that all three defendants violated specially enumerated laws.  *See e.g.* SAC ¶¶ 49-50.  These detailed allegations plainly alert the defendants to the particulars of their misconduct and the claims against them, satisfying Rule 8(a)'s "lenient" pleading standard.  *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 n.4 (9th Cir. 2019).

Even if the Court were to conclude that the SAC's collective references to the "Defendant Corporations" lack sufficient particularity (they don't), the appropriate remedy is leave to amend, not dismissal with prejudice.  *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely give[n] … when justice so requires"); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003).

        2.    <u>Corporate Defendants' Liability Is Premised On Ratification, Not Vicarious Liability</u>

Defendants next argue that all claims against the Corporate Defendants, save that of negligent supervision, fail because they are "premised on vicarious liability" the elements of which cannot be satisfied here.  Mot. at 12–13.  But the premise of the Corporate Defendants liability on those causes of action is ratification—an "alternate theory to respondeat superior."  *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1110–11 (2009).

Under California law, an employer may be held liable for the tortious acts of an employee if the employer either authorized the wrongful act or subsequently ratified it.  *Id.*; *see also Ventura v. ABM Indus. Inc.*, 212 Cal. App. 4th 258, 272 (2012); Cal. Civ. Code § 2339.  "Ratification may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent."  *Roberts v. Ford Aerospace & Commc'ns Corp.*, 224 Cal. App. 3d 793, 801 (1990) (citation modified).  Failure to discharge or discipline an employee may serve as evidence of ratification.  *Id.*; *see also Ventura*, at 272 (same).

In *C.R. v. Tenet*, the court found that vicarious liability analysis was not

17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX (310) 552-8400

required where the operative complaint included "sufficient allegations" that the corporate defendant ratified their employee's alleged sexual misconduct including that the employee was "an agent and employee of defendant," he was acting on defendant's behalf, "all acts and omissions" were "ratified by defendant," that defendant knew of the employee's sexual misconduct and that "no disciplinary action was taken and he was allowed to be alone with women." 169 Cal. App. 4th at 1112.

The SAC aligns exactly with *C.R. v. Tenet.* The SAC alleges that Mr. Combs was an agent and employee of the Corporate Defendants (SAC ¶ 8), that he served as an executive for each (SAC ¶ 2), and that "at all times . . . [was] acting within the course, scope and authority of said agency [and] employment]" (SAC ¶ 8). Furthermore, each of the claims asserted against the Corporate Defendants at issue here contains an identical allegation that Corporate Defendants are liable because they "ratified [Mr. Combs'] conduct including by failing to dismiss him or discipline him in any way." SAC ¶¶ 49, 56, 62, 68, 73. The SAC also alleges that the Corporate Defendants "were aware of Mr. Combs' violent proclivities in general, as well as his assault on Ms. Bongolan in particular" and that "at no time did Defendant Corporations … discharge or discipline Mr. Combs for his violent conduct against Ms. Bongolan and in fact facilitated his efforts, by their actions or omissions, to prevent Ms. Bongolan taking steps to seek justice." SAC ¶¶ 37–38.[5]

[5] Notably, while ratification is the SAC's primary theory of liability, the allegations also suffice for respondeat superior at the pleading stage. The SAC alleges that Combs was the founder of Bad Boy Entertainment, was an agent and employee of the Corporate Defendants, and controlled and served as an executive for both Corporate Defendants. SAC ¶¶ 2, 4, 8. These allegations support a reasonable inference of an employment or agency relationship. *Manzarek*, 519 F.3d at 1031. As to scope of employment, as acknowledged by the case law cited by Defendants, that inquiry is "[o]rdinarily" a "question of fact" *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213 (1991). And here, where the SAC alleged Mr. Combs' violence was intertwined with his professional relationships—Plaintiff met him through

798618.3

18

The Motion does not address the ratification allegations whatsoever and none of the authorities cited by Defendants—*Lisa M.*, *Mary M.*, *Farmers Insurance Group*, *Far West Financial Corp.*, *CRST*—addresses ratification.  Therefore, even if this Court agrees with the Motion's respondeat superior analysis, Defendants have failed to carry their burden for dismissal.  Furthermore, Defendants' reliance on *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291 (1995), is misplaced: *Lisa M.* was decided on summary judgment with a developed factual record, not on the pleadings.  And Defendants' derivative argument—that vicarious liability fails because the underlying claims are inadequately pleaded—depends entirely on the merits arguments addressed above, which should be rejected.

3.    The SAC Sufficiently Pleads Negligent Supervision

A claim for negligent supervision must plead the elements of negligence, as well as the existence of an employment relationship and foreseeability of the injury. *Acevedo*, 713 F. Supp. 3d at 803.  Defendants argue that the SAC misses on both of these elements.  Not so.  First, as detailed above, the SAC clearly alleges an employment relationship between Mr. Combs and the Corporate Defendants.  *See* Section IV.C.1, *supra*; *see also* SAC ¶ 8 ("at all times mentioned herein, Defendants ... were the agents, servants, employees and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment[.]")[6]

The SAC also sufficiently pleads foreseeability.  As noted by the court in *D.Z. v. Los Angeles Unified School District* upon which Defendants rely, "[f]oreseeability is determined in light of all the circumstances and does not require prior identical

work, performed services for his companies, and was threatened by him in professional settings (SAC ¶¶ 29–32)—making scope of employment unsuitable for resolution at the 12(b)(6) stage.

[6] Defendants also concede that the duty element is "adequately pleaded" before immediately contradicting themselves.  Mot. at 13.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

798618.3

19

events or injuries." 35 Cal. App. 5th 210, 229 (2019). Negligence is established if "a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of adequate safeguards." *Id.* (citation modified); *see also Doe v. U.S. Youth Soccer Ass'n, Inc.*, 8 Cal. App. 5th 1118, 1131 (2017) (*Youth Soccer*).

In *Youth Soccer*, the court reversed an order sustaining demurrers as to a negligent supervision claim against a youth soccer league in a case involving the sexual abuse of a minor by a coach. *Id.* at 1144. Despite the fact that the defendant "had no knowledge" that the coach "had previously sexually or physically abused anyone or had a propensity to do so," they did know that there were incidents of such abused by coaches in general in the past and therefore the risk of harm was reasonably foreseeable. *Id.* at 1132–33. The allegations in the SAC more than meet this standard because they detail that Mr. Combs *in specific*, and not just employees in general, had committed acts of violence and sexual violence against women.

Defendants' citation to *D.Z. v. Los Angeles Unified School District* compels no different result. First, that case concerned the propriety of jury instructions on a negligent supervision case; not adequacy of a pleading and it is therefore inapposite. 35 Cal. App. 5th at 235. Furthermore, Defendants argue that the SAC fails to plead the Corporate Defendant's knowledge of the "particular risk in question." Mot. at 15:11–12. Though the Motion does not state what is that "particular risk," it is implied that Defendants contend that foreseeability requires the Corporate Defendants to have known Mr. Combs was likely to commit sexual assault specifically, as distinguished from other forms of violence. But as above, the case law, including that relied upon by Defendants, does not require identical prior acts to establish foreseeability. And the SAC alleges a pattern of physical and sexual violence against woman in Mr. Combs' professional circle. These allegations include that the Corporate Defendants were aware of Mr. Combs' history of violence against women—including his beatings of Ms. Ventura who was signed to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

20

his recording label (SAC ¶¶ 25–27), the black eye he gave her (SAC ¶ 26), his throwing a knife at her in Ms. Bongolan's presence (SAC ¶ 28), his tracking and controlling behavior (SAC ¶¶ 22–24), and his assault on Ms. Bongolan herself (SAC ¶ 37). These are not allegations of mere "temperament." They describe a pattern of brazen and loud physical and sexual violence directed specifically at women within Mr. Combs' professional orbit.

Defendants also argue that Ms. Bongolan was required to plead how the Corporate Defendants came to learn about Mr. Combs' violent proclivities and his assault on her person. Mot. at 14:7–9. Defendants provide no authority in support of the notion that these are required for a sufficient pleading of negligent supervision, nor could they given that such information would be in the sole possession of Defendants and therefore need not be pled. *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987) (a plaintiff is not required to plead facts "in the exclusive possession of the defendants," even under Rule 9's heightened pleading standard).

### D.    In The Alternative, Leave To Amend Should Be Granted

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (citation omitted); Fed. R. Civ. P. 15(a)(2). Even if the Court is persuaded that any element of the SAC is inadequately pled—and it should not—Ms. Bongolan respectfully requests leave to amend to allege additional facts. Notably, Defendants do not ask the Court to dismiss the SAC with prejudice or claim that amendment would be futile, and Defendants would not be unfairly prejudiced by further amendment given discovery has not even begun.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## V.  CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss should be denied in its entirety.

DATED:  April 30, 2026                     MILLER BARONDESS, LLP

By: _____
JAMES R. NIKRAFTAR
Attorneys for Plaintiff
Bryana Bongolan

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

22

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,959 words, which complies with the word limit of L.R. 11-6.1.


DATED:  April 30, 2026          MILLER BARONDESS, LLP


By: _____

JAMES R. NIKRAFTAR
Attorneys for Plaintiff
Bryana Bongolan

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

798618.3

23